**Thomas A. THIMONS, Appellant,**

v.

**PNC BANK, N.A., Appellees.**

**No. 06–3815.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 24, 2007.

Filed: Oct. 23, 2007.

Walter G. Bleil, Goldberg, Kamin & Garvin, Pittsburgh, PA, for Appellant.

Maria G. Danaher, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Appellees.

Before: McKEE, BARRY, & FISHER, Circuit Judges.

## OPINION

McKEE, Circuit Judge.

Thomas A. Thimons appeals a grant of summary judgment in favor of his former employer, PNC Bank. Thimons alleged discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* as well as under the Pennsylvania Human Relations Act ("PHRA")[1], 43 P.S. §§ 951–963. For the reasons that follow, we will affirm.

## I.

Since we write primarily for the parties who are familiar with this case, we need not discuss the procedural or historical background. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's grant of summary judgment is plenary. *See Turner v. Hershey Chocolate U.S.A.,* 440 F.3d 604, 611 (3d

Cir.2006). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we view all the facts in the light most favorable to Thimons as the non-moving party, and draw all reasonable inferences in his favor. *See Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 535 (3d Cir.2007).

## II.

In order to establish a *prima facie* case of discrimination under the ADA, Thimons must demonstrate: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3d Cir.1998).

Thimons contends that he was fired because of his age and alcoholism, and that summary judgment was not appropriate because material facts were in dispute concerning whether he was a "qualified individual" under the ADA as well as his honesty during the two interviews at PNC.

Claims under the ADA, ADEA, and PHRA all follow the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff-employee bears the initial burden of proving a *prima facie* case of discrimination. *Id.* The burden then shifts to the employer to present a non-discriminatory reason for the adverse decision. *Id.*

1. "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir.2002).

Once an employer presents a non-discriminatory reason for termination under the ADA, ADEA, or PHRA, the employee must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir.2005). *See also Smith v. Davis*, 248 F.3d 249 (3d Cir.2001) (reversing a grant of summary judgment for an alcoholic because defendants did not present a sufficient legitimate reason for his termination). The plaintiff's claim will not survive a summary judgment motion if he/she fails to fulfill the third step. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the plaintiff must present sufficient evidence to allow a factfinder to conclude that the employer's non-discriminatory reason was a *post hoc* fabrication, or pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998).

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken ... Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes*, 32 F.3d at 765 (internal citations omitted).

Here, PNC maintains a "fidelity bond" which covers all employees and protects the company from theft. An employee's coverage under that bond ends when he/she is suspected of committing a fraudulent or dishonest act, "including making misrepresentations during an investigation." A41.

PNC submitted evidence that Thimons was fired because he made inconsistent statements during investigatory interviews into overdrafts that were only discovered while he was on leave. The evidence established that Thimons' responses during the interviews caused PNC to have a good faith and reasonable belief that Thimons may have committed fraud and he therefore no longer qualified for coverage under its fidelity bond. It is uncontested that eligibility for coverage under that bond is a condition of employment with PNC.

Thimons devotes a substantial part of his brief to arguing that there is a genuine issue of material fact about his alcoholism, any resulting impairment, and whether he was "disabled" within the meaning of the ADA, ADEA, or PHRA, as well as the extent to which his age was a motivating factor in his termination. *See* Appellants' Br. at 18 to 25. However, nothing he has proffered refutes PNC's explanation for his termination, a termination that has nothing to do with any protected classification or disability. Indeed, it is significant that, in refuting PNC's concerns about his failing to call PNC's relations manager about overdrafts, Thimons "responded that his phone was broken for a period of time and produced evidence of that fact." *Id.* at 7. Given the omnipresence of telephones in this society, such an explanation could only have exacerbated and reinforced PNC's concerns about Thimons' veracity and candor regarding the overdrafts. It is difficult to understand how a single "broken" telephone could prevent an

employee from contacting his employer if the employee truly wanted to speak to the employer. The "excuse" certainly does not negate the force of PNC's affidavits.

Similarly, Thimons' affidavit denying dishonesty is not enough to defeat PNC's motion for summary judgment. One can not create an issue of fact merely by submitting an affidavit denying averments in conflicting affidavits without producing any supporting evidence of the denials. *Fuentes,* 32 F.3d at 764 ("[w]e can reject out of hand ... that the plaintiff can avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations....").

Moreover, the issue is not Thimons' culpability for the overdrafts; it is his inability to qualify for coverage under PNC's fidelity bond, a condition of employment that he does not deny. PNC, on the other hand, has provided evidence supporting its contention that Thimons was fired for non-discriminatory reasons. Rhodes and Calhoun stated that Thimons' termination was due to his perceived dishonesty while being questioned and subsequent ineligibility for coverage under the fidelity bond. To its credit, PNC checked Thimons' phone and computer records and attempted to verify his excuses for failing to approve the overdrafts. PNC was not able to verify any of Thimons' excuses. It was not able to corroborate them.

The uncontradicted evidence suggests that PNC did everything it could reasonably have been expected to do to help Thimons with his unfortunate personal problems and to maximize the chances that he could continue his employment with the company. This included helping him contact a counselor, offering time off, and meeting with him about returning to work.

Accordingly, the court clearly did not err in granting PNC summary judgment on his claim of disability discrimination under the ADA or PHRA.[2]

Thimons' ADEA claim fares no better. To establish a *prima facie* case of age discrimination, Thimons must show that he: (1) was forty years old or older; (2) was terminated; (3) was qualified for the job; (4) and was replaced by a person sufficiently younger to provide the inference of discrimination. *See Showalter v. Univ. of Pittsburgh Med. Ctr.,* 190 F.3d 231, 234 (3d Cir.1999). Although Thimons is able to satisfy the first three prongs, he can not satisfy the final, most important prong. Although he was replaced by a younger employee, Thimons presents no evidence that age played any part in his firing. Thimons himself conceded that he was fired "because I'm an alcoholic and I didn't get along with [Rhodes]." (A82).

Although we are not unsympathetic to the personal tragedy that appears to have befallen Thimons, his attempt to parlay his alcoholism and regrettable loss of employment into a lawsuit borders on frivolity, and the district court correctly ended it by granting PNC's motion for summary judgment on all of his claims.

## III.

For the reasons above, we will affirm the district court's order granting summary judgment.

---

**2.** Because Thimons failed to carry his burden, we need not decide if alcoholism is a "disability" under the ADA.